UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RYAN ALLEN HALE,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>ANGELA POUNDS, SERGEANT BLACKBURN, and ERIC BLAIR,<br><br>　　　　　　Defendants. | Case No. 1:19-cv-00329-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court has conditionally filed Plaintiff Ryan Allen Hale's Complaint as a result of his status as a prisoner and request to proceed in forma pauperis. Dkts. 3, 1. A "conditional filing" means that Plaintiff must obtain authorization from the Court to proceed. All prisoner and pauper complaints must be screened by the Court to determine whether summary dismissal is appropriate. 28 U.S.C. §§ 1915 & 1915A. The Court must dismiss any claims that state a frivolous or malicious claim, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

After reviewing the Complaint, the Court has determined that Plaintiff may proceed.

**REVIEW OF COMPLAINT**

1. **Standard of Law for Screening Complaints**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient

for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs are required to state facts, and not just legal theories, in a complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In *Iqbal*, the Court made clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. In other words, Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotation marks omitted).

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

2. **Review of Sexual Harassment Claim**

    *A.    Factual Allegations*

Plaintiff is an inmate in the custody of the Idaho Department of Correction (IDOC). At the time of the incidents alleged, Plaintiff was housed in the Idaho State Correctional Institution's Behavioral Health Unit under a clinical diagnosis of Post-Traumatic Stress Disorder (PTSD) and psychosis. In January 2019, Correctional Officer Angela Pound formed a personal relationship with Plaintiff and began to say sexually suggestive things to him. In late January and in February, Pound wrote him two notes with explicit sexual

content, one of which he destroyed, and the other of which he gave to prison officials to complain of sexual harassment by Officer Pound.

### B. *Standard of Law*

Whether a specific act constitutes Eighth Amendment cruel and unusual punishment is measured by "'the evolving standards of decency that mark the progress of a maturing society.'" *Wood v. Beauclair*, 692 F.3d 1041, 1045–46 (9th Cir. 2012) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). Sexual harassment or abuse of an inmate by a corrections officer is classified as a violation of the Eighth Amendment. *Id*., 692 F.3d at 1046. In *Schwenk v. Hartford,* 204 F.3d 1187 (9th Cir. 2000), the court observed: "In the simplest and most absolute of terms ... prisoners [have a clearly established Eighth Amendment right] to be free from sexual abuse." *Id*. at 119.

In *Wood v. Beauclair*, the court set forth the following test for determining whether sexual abuse occurred:

> [W]hen a prisoner alleges sexual abuse by a prison guard, we believe the prisoner is entitled to a presumption that the conduct was not consensual. The state then may rebut this presumption by showing that the conduct involved no coercive factors. We need not attempt to exhaustively describe every factor which could be fairly characterized as coercive. Of course, explicit assertions or manifestations of non-consent indicate coercion, but so too may favors, privileges, or any type of exchange for sex. Unless the state carries its burden, the prisoner is deemed to have established the fact of non-consent.

692 F.3d at 1049.

### C. *Discussion of Sexual Abuse Allegations*

Any romantic or sexual relationship between a prisoner and a prison employee

begins with the presumption that it was nonconsensual. Plaintiff's allegations are sufficient to permit him to proceed on his claim of sexual harassment and abuse against Defendant Pound.

### 3. Review of Failure to Protect Allegations

#### A. *Factual Allegations*

In February 2019, Plaintiff alleges that he wrote an anonymous concern form to authorities informing them of Pound's inappropriate actions. In May 2019, Pound came into Plaintiff's cell, upset and crying, and told him, "I'm fucked," which evinced Pound's knowledge of Plaintiff's report of her behavior to prison officials.

Sergeant Blackburn was assigned to perform an investigation. Plaintiff alleges that Blackburn did not separate Plaintiff from Pound during the three-month investigation, which gave Pound opportunity to continue to harass Plaintiff. After three months, Pound was removed from Plaintiff's unit.

#### B. *Standard of Law*

To state a failure-to-protect claim, Plaintiff must allege facts showing that Defendants were deliberately indifferent to his safety and well-being. "[D]eliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). To exhibit deliberate indifference, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Prison officials who act with deliberate indifference to the threat of harm or injury from other individuals are subject to liability under § 1983. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). In evaluating a prisoner's claim, courts must consider whether "the officials act[ed] with a sufficiently culpable state of mind and if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (citation and internal quotation marks omitted); *accord Wood*, 692 F.3d at 1046.

### C. Discussion

Defendant Blackburn likely was aware that Plaintiff was being housed in the mental health unit for mental health reasons. When Blackburn began investigating the matter, he did not make an effort to stop the harassment immediately by removing Pound from the mental health unit, but only did so after three months. These allegations are sufficient to state a failure-to-protect claim against Blackburn. Plaintiff may proceed on this claim.

**4. Review of Retaliation and Interference with Grievances Claims**

### A. Factual Allegations

After Plaintiff reported the sexual abuse, Officer Pound began to go beyond a normal pat-down search with him and sexually assault him by groping his penis, scrotum, and buttocks. Plaintiff alleges that these acts were in retaliation for his reporting Pound's conduct to officials.

In late May 2019, Plaintiff wrote another concern form, this time complaining about the way the investigation was handled. Plaintiff gave the concern form to Officer Taylor, who delivered it to Defendant Blair to handle. Rather than signing the concern form in

conformity with IDOC regulations, Defendant Blair took Plaintiff and his concern form into Plaintiff's mental health counselor and left. Blair also contacted Deputy Warden Valley, who came to Plaintiff's unit, told Plaintiff he was sorry for the assault, took the concern form without signing it, and left. Plaintiff later submitted another concern form to a different officer, who signed it and passed it on to authorities. Plaintiff then filed a grievance and an appeal. Unlike with the concern form that was never signed or returned by authorities, Plaintiff was satisfied that he had properly exhausted his administrative remedies with the second form.

Plaintiff alleges that, in August 2019, when Blair became aware that his name was contained in the grievance alleging that he impeded Plaintiff's ability to exhaust his administrative remedies, he began to retaliate against Plaintiff by ordering correctional officers to repeatedly search Plaintiff's cell. Plaintiff alleges that his cell was searched twice on August 13, 2019, and again on August 15, 16, and 17.

On August 17, Plaintiff was moved to a different cell without any explanation. When he entered the cell, he was greeted by his cellmate, who said, "I'm the nephew of Angela Pound." Plaintiff exited the cell. He later learned that the cell move had not been authorized by mental health staff.

### B. *Standard of Law for Retaliation Claims*

A First Amendment retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, . . . that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Although a "chilling effect on First Amendment rights" is enough to state an injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to state a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985).

### C. Discussion of Retaliation Claims

Voicing one's complaints through the prison grievance process is a protected First Amendment activity. Plaintiff has alleged that Defendant Pound began to sexually assault him after he reported her improper actions to prison authorities. He may proceed on his retaliation claims against Pound.

Plaintiff also has sufficiently alleged that, when he complained about Blair's actions in allegedly impeding his ability to administratively exhaust his claims, Blair began to retaliate against him by ordering officers to conduct harassing cell. To prevail on this claim, Plaintiff will be required to show that Blair ordered the cell searches for a retaliatory reason. At this point, it is unknown whether Blair's action was retaliatory, or whether there were legitimate penological reasons for the cell searches. Liberally construing the Complaint, the Court concludes that Plaintiff has provided sufficient facts to state a retaliation claim against Blair.

### D. Standard of Law for Access-to-Courts Claims

"There is no legitimate claim of entitlement to a [jail] grievance procedure" under the Constitution. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), *cert. denied*, 488 U.S. 898 (1988). Therefore, no cause of action can be maintained on such allegations.

However, if interference with established prison grievance procedures causes a prisoner to suffer an actual injury in being able to access the courts, the prisoner can proceed on an access to courts claim. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995); *see Lewis v. Casey*, 518 U.S. 343, 348 (1996) (defining actual injury).

To allege an injury that affected the right to access the courts, a plaintiff must (1) adequately describe the claim that was hindered and (2) allege facts that show it was actually hindered. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "Hindered claims" can be "forward-looking" claims (those for which an impediment must be removed to permit the plaintiff to proceed with a still-viable claim) or "backward-looking" claims (those now impossible to file, like a statute of limitations issue). *Id*. at 413-14.

### E. *Discussion of Access-to-Courts Claim*

Plaintiff's allegations about Blair's failure to sign the concern form does not serve as a basis for a cause of action. It may be that Blair legitimately decided that the allegations in the concern form required an immediate investigation, and took action to make that happen, rather than simply sign the form and pass it on. In fact, Blair brought the matter to the immediate attention of Plaintiff's counselor and the Deputy Warden. These actions do not suggest that Blair was attempting to hide Plaintiff's allegations against him, but to take extraordinary steps to bring them to the attention of authorities and resolve them. If prison officials decide to handle a concern form outside the regular grievance system, then the requirement of exhaustion is waived.

Because Plaintiff is being permitted to proceed on his claims, and there is no determination that he has been unable to access the courts as a result of any of Defendants'

alleged actions, an access-to-courts claim has not accrued. However, if Plaintiff's claims are dismissed for failure to exhaust administrative remedies, and Plaintiff can tie causation of loss of the claim to Defendants' actions, he may file a motion to amend and a proposed amended complaint.

### 5. Claim Against Lieutenant Governor

Plaintiff complained to the *Balla* prisoner class action lawyers that Blair had tried to impede his ability to complete the administrative exhaustion process.[1] The *Balla* lawyers contacted prison officials about the situation. Prison officials assigned an IDOC official, Lieutenant Governor, to investigate in August 2019.

As part of the investigation, Governor brought Blair and Plaintiff into the same room. Plaintiff asserts that the purposes of the meeting was to interrogate Plaintiff in front of the person he had accused of harassing him. Plaintiff alleges that Governor and Blair colluded together to plan the meeting so that both of them could question Plaintiff at the same time. Plaintiff alleges that Governor acted "without forethought" and "with malice." Plaintiff refused to participate in the meeting.

Governor stated in his response to Plaintiff's concern form about the meeting that he was unaware of ongoing problems between Plaintiff and Blair. In response to Plaintiff's grievance, Governor stated:

> The purpose of visiting you was out of care and concern as you had reported that staff were retaliating against you. This meeting was to allow you the opportunity to express any

---
[1] *Balla v. Idaho State Board of Correction*, Case No. 81-cv-1165-BLW, is a prison class action lawsuit about prison conditions at the Idaho State Correctional Institution (ISCI). The prisoner class is represented by paid counsel.

> concerns you had and ensure you felt you were in the appropriate housing area and were not needing relocation. At no time prior to or during this meeting was I aware that you felt there were issues between you and Sgt. Blair.

Dkt. 5, Exhibit.

It is unclear whether Governor had notice of the specific allegations of Plaintiff against Blair. It could be that the *Balla* attorneys contacted the IDOC attorneys, then the IDOC attorneys contacted the Warden, and then the Warden asked Governor to investigate—with the specifics not having been communicated down the chain of communication. Or, it could be that Governor knew the allegations were against Blair, that Governor consulted with Blair, and that Governor brought Blair and Plaintiff together in an attempt to squelch Plaintiff's complaints and intimidate him.

Liberally construing the allegations, the Court will permit Plaintiff to proceed to the next stage of ligation against Lieutenant Governor.

### 5. The PREA Provides No Private Cause of Action

#### A. *Standard of Law*

Plaintiff also alleges that various prison officials violated his civil rights by failing to follow the guidelines and procedures of the Prison Rape Elimination Act of 2003 ("PREA"), as set forth in 42 U.S.C. §§ 15602–15609. A private right of action "to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). A private citizen cannot sue under a particular act of Congress unless the statute "displays an intent to create not just a private right but also a private remedy." *Id*. A statute's authorization of a private right of action can be express or implied from "the

statute's language, structure, context, and legislative history." *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1115 (9th Cir. 2010).

Congress enacted the PREA to address the problem of rape (including sexual assault with an object and sexual fondling) in prison by creating and apply national standards to prevent, detect, and respond to prison rape, and ensuring compliance of state and federal prisons by conditioning eligibility for federal grant money on compliance with the standards. 42 U.S.C. §§ 15602 to 15608. Promulgating a final rule adopting national standards and monitoring compliance with the PREA standards is tasked to the United States Attorney General, the Secretary of Homeland Security, and the Secretary of Health and Human Services. 42 U.S.C. § 15607.

Many courts have examined this issue and have decided that nothing in the PREA explicitly or implicitly suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act. *See Hatcher v. Harrington*, 2015 WL 474313, at *5 (D. Haw. Feb. 5, 2015); *Simmons v. Solozano*, 2014 WL 4627278, at *4 (W.D.Ky. Sept. 16, 2014); *Montgomery v. Harper*, 2014 WL 4104163, at *3 (W.D.Ky. Aug. 19, 2014); *Chapman v. Willis*, 2013 WL 2322947, at *4 (W.D.Va. May 28, 2013); *Pope v. Or. Dep't of Corr.*, 2012 WL 1866601, at *4 (D.Or. May 22, 2012); *Porter v. Jennings*, 2012 WL 1434986, at *1 (E.D.Cal. Apr. 25, 2012); *Ball v. Beckworth*, 2011 WL 4375806, at *4 (D.Mont. Aug. 31, 2011), *R & R adopted* 2011 WL 4382074 (D.Mont. Sept. 19, 2011); *Bell v. Cnty. of L.A.*, 2008 WL 4375768, at *6 (C.D.Cal. Aug. 25, 2008).

### B. *Discussion*

This court agrees with the reasoning of the courts above that there is no private cause of action available to Plaintiff for alleged violations of the PREA. Therefore, Plaintiff cannot proceed against Defendants on a PREA claim.

### 6. Conclusion

Plaintiff may proceed only as set forth above. This Order does not guarantee that any of Plaintiff's claims will be successful; it merely finds that one or more is colorable, meaning that the claims will not be summarily dismissed at this stage. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims, but it is only a determination that one or more of Plaintiff's claims is plausible and should proceed to the next stage of litigation. Plaintiff cannot proceed against any "unknown and unnamed officials," but may file a motion to amend the original complaint and a proposed amended complaint if he discovers facts supporting claims against other defendants.

### 7. Plaintiff's Request for Appointment of Counsel

Given the serious allegations in the Complaint and the difficulty of conducting discovery on one's own claims of sexual abuse against a state official, the Court finds it appropriate to ask the Court's Pro Se Pro Bono Coordinator to attempt to find pro bono counsel for Plaintiff. If counsel agrees to represent Plaintiff, he shall not contact counsel, but wait for counsel to contact him. Plaintiff should continue to search for counsel himself, whether that be a representation on a contingency basis or a private pro bono appointment.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's request for appointment of counsel (contained in the Complaint) is GRANTED. The Clerk of Court shall provide a copy of this Order to the Court's Pro Se Pro Bono Coordinator for further action.

2. Plaintiff's Motion for Leave to File Supplemental Complaint (grievance form exhibit) (Dkt. 5) is GRANTED.

3. Defendants **Angela Pounds, Eric Blair**, **Sergeant Blackburn, and Lieutenant Governor** shall be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within thirty (30) days. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion shall be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court shall forward a copy of the Complaint (Dkt. 3), and a copy of this Order, and a Waiver of Service of Summons to the following counsel: **Mark Kubinski**, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706.

4. Plaintiff may not proceed against "Unknown and Unnamed Defendants" and claims against them are TERMINATED. If Plaintiff

later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to amend the complaint to assert such claims.[2]

5. Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, indicating which individuals for whom service will not be waived.

6. If Plaintiff receives a notice from Defendants indicating that service will not be waived for an entity or certain individuals, Plaintiff will have an additional 90 days from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them will be dismissed without prejudice without further notice.

7. The parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued with this Order.

---

[2] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc).

8. Any amended pleadings must be submitted, along with a motion to amend, within 150 days after entry of this Order.

9. Dispositive motions must be filed no later than 300 days after entry of this Order.

10. Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

11. The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

12. All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to

Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

13. No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

14. Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

15. Pursuant to General Order 324, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: December 9, 2019

_____
David C. Nye
Chief U.S. District Court Judge